

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 3:10CR199–HEH |
| | )   Civil No. 3:13CV67–HEH |
| JOSEPH THOMAS SMITH, | ) |
| | ) |
| Petitioner. | ) |

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2255 Motion)

Joseph Thomas Smith, a federal inmate proceeding *pro se*, submitted this motion

under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion,"

ECF No. 42).[1]  Smith contends that he received ineffective assistance of counsel[2] in

conjunction with his guilty plea, sentencing, and appeal.  Specifically, Smith demands

relief because:

> Claim One:  "Ineffective assistance of counsel for counsel's conflict for
> serving as the prosecutor for one of Smith's state court
> convictions.  Hence, Bruns's representation, in the federal
> case, served as a clandestine attempt to punish Smith for a
> previous infraction." (Gov't Resp. 5, ECF No. 49.)[3]

---

[1] The Court employs the pagination assigned to Smith's submissions by the CM/ECF docketing system.  The Court corrects the spelling, capitalization, spacing, and punctuation in the quotations from Smith's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[3] In his § 2255 Motion, Smith raised the following two claims: (1) "Fifth Amendment of the United States Constitution in which Movant claims that he [was] denied a right to due process;" and (2) "Movant's Sixth Amendment right to effective counsel was denied, and as [a] direct result of counsel's Sixth Amendment right to effective counsel, Movant has been prejudiced due to counsel's ineffective assistance of counsel." (§ 2255 Mot. 6–7.)  In his Memorandum, however, Smith sets forth various vague sub-claims of ineffective assistance of counsel.  (Mem.

| | |
|---|---|
| Claim Two: | "Ineffective assistance of counsel for counsels' failure to negotiate a favorable plea agreement for Smith." (*Id.*) |
| Claim Three: | "Ineffective assistance of counsel for counsels' failure to petition the Court for, or advise Smith of, the option to receive a 'pre-presentence' evaluation from U.S. Probation and Pretrial Services." (*Id.*) |
| Claim Four: | "Ineffective assistance of counsel for counsels' failure to investigate information provided to counsel by Smith, including failure to investigate co-defendant's conspiracy to blame underlying crime on Smith; and counsels' failure to investigate law enforcement agent's conspiracy to implicate Smith in the underlying crime." (*Id.*) |
| Claim Five: | "Ineffective assistance of counsel for counsel's failure to review discovery with Smith." (*Id.*) |
| Claim Six: | "Ineffective assistance of counsel for counsels' failure to properly handle sentencing issues, including (a) failing to investigate false information contained in Smith's presentence report which affected Smith's sentencing guideline; (b) failure to research or study Sentencing Guideline departures[;] (c) failing to present alibi evidence and therefore failed to properly counter the Government's motions and the Probation Office's suggestions." (*Id.*) |
| Claim Seven: | "Ineffective assistance of counsel for counsels' failure to file a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit; for filing a brief with the Court pursuant to *Anders v. California*, 386 U.S. 738 (1967); and by petitioning the Court to be removed from Smith's case." (*Id.*) |

The Government responded, asserting that Smith's claims lack merit. (ECF No. 49.)

Smith has filed a Reply. (ECF No. 50.) Smith has also filed a motion for leave to

---

Supp. § 2255 Mot. 20–21, ECF No. 43–1.) The Government summarized Smith's grounds for relief as the seven claims set forth above. (Gov't Resp. 5.) Smith adopted the Government's recitation of his claims in his Reply. (Reply 1–13.) Accordingly, the Court also adopts the Government's recitation of Smith's claims.

proceed *in forma pauperis* (ECF No. 54), which the Court will deny as moot because no filing fee is needed for a § 2255 motion. Smith has also filed two motions for leave to file an amended § 2255 Motion (ECF Nos. 53 and 58), which the Court considers below. For the reasons set forth below, Smith's § 2255 Motion (ECF No. 42), as well as his two motions to amend (ECF Nos. 53 and 58), will be denied.

## I. PROCEDURAL HISTORY

On July 13, 2010, a grand jury charged Smith with conspiracy to commit robbery affecting commerce (Count One); robbery affecting commerce (Counts Two and Five); using, carrying, and possessing a firearm in relation to a crime of violence (Counts Three and Six); and carjacking resulting in death (Count Four). (Indictment 1–10, ECF No. 10.) The Indictment included a Notice of Special Findings as to Count Four. (*Id.* at 11–12.) On November 18, 2010, the Government filed a Notice of Intent to Not Seek a Sentence of Death. (ECF No. 18.) On December 6, 2010, Smith entered into a Plea Agreement in which he agreed to plead guilty to Count Four. (Plea Agreement ¶ 1, ECF No. 20.)

On March 8, 2011, the Court entered judgment against Smith and sentenced him to life imprisonment, followed by five years of supervised release. (J. 2–3, ECF No. 27.) Smith filed a *pro se* Notice of Appeal. (ECF No. 29.) Smith's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *See United States v. Smith*, 454 F. App'x 172, 172–73 (4th Cir. 2011). Smith filed a *pro se* supplemental brief, arguing "that the government lacked jurisdiction to prosecute him for carjacking, and that counsel was ineffective for failing to provide him with discovery materials and failing to disclose

3

a conflict of interest which resulted from the fact that Smith's attorney had previously

prosecuted him on a vehicle theft charge." *Id.* at 173.  The Government moved to

dismiss the appeal based upon the waiver included in Smith's Plea Agreement.  *Id.*  The

United States Court of Appeals for the Fourth Circuit granted the Government's motion

to dismiss in part and dismissed Smith's appeal as to any sentencing issues.  *Id.*  The

Fourth Circuit also rejected Smith's argument regarding his carjacking conviction and

declined to consider his claims of ineffective assistance.  *Id.* at 173–74.  Smith did not

file a petition for a writ of certiorari in the Supreme Court.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must

show first, that counsel's representation was deficient and second, that the deficient

performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant

must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within

the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577,

588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component

requires a convicted defendant to "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel

4

claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Smith's prior sworn statements as other than truthful.

### A. Counsel's Performance During Pre-Plea and Guilty Plea Proceedings

#### 1. Conflict of Interest

In Claim One, Smith asserts that counsel was ineffective because of "counsel's conflict for serving as the prosecutor for one of Smith's state court convictions. Hence, according to Smith, his attorney, Theodore D. Bruns's representation, in the federal case, served as a clandestine attempt to punish Smith for a previous infraction." (Gov't Resp. 5.)

The Sixth Amendment guarantee of effective assistance of counsel "requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007) ("*Nicholson I*") (quoting *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991)). "When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), instead of that articulated in *Strickland*." *Id.* (citations and parallel citations omitted). Specifically, "in order to prevail on an actual conflict of interest claim, [the petitioner must show] that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" *United States v. Nicholson*, 611 F.3d 191, 195 n.2 (4th Cir. 2010) ("*Nicholson II*") (quoting *Sullivan*, 446 U.S. at 348). "If the petitioner makes this showing, prejudice is presumed and nothing more is required for relief." *Id.* at 205 (citations omitted).

6

Nevertheless, "[a]nalysis of claims of actual conflicts of interest frequently do not proceed in two distinct steps; rather '[t]he two requirements . . . are often intertwined.'" *Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005) (second alteration and omission in original) (quoting *Tatum*, 943 F.2d at 375)). This is so because an actual conflict of interest means "a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Thus, the Supreme Court emphasized that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id.* at 172 n.5; *see Nicholson II*, 611 F.3d at 195 n.2.

To establish a conflict of interest, Smith must demonstrate that his and Bruns's "interests diverged with respect to a material factual or legal issue or to a course of action." *Nicholson II*, 611 F.3d at 215 (quoting *Nicholson I*, 475 F.3d at 249). To establish an adverse effect, Smith must satisfy the standard announced in *Mickens v. Taylor*, 240 F.3d 348 (4th Cir. 2001). *Nicholson I*, 475 F.3d at 251–52 (citing *Mickens*, 240 F.3d at 361, *aff'd* 535 U.S. 162 (2002)).

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of *Tatum*, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." *Tatum*, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

7

*Mickens*, 240 F.3d at 361.

Smith does not satisfy the *Mickens* standard. He has not identified a factual or legal issue, or a course of action, with which his interests diverged from Bruns's. Nor does Smith suggest a defense strategy or tactic that Bruns might have pursued. Finally, Smith fails to establish that an actual conflict existed. Because Smith's assertion of a conflict of interest is mere speculation, Claim One will be dismissed.

### 2.      Counsel's Failure to Negotiate a Favorable Plea Agreement

In Claim Two, Smith asserts that counsel "fail[ed] to negotiate a favorable plea agreement for Smith." (Gov't Resp. 5.) Smith first alleges that "but for counsel's unprofessional omissions, there is a reasonable probability that counsel could have obtained a Fed. R. Crim. P. 11(c)(1)(C) agreement with the government limiting Mr. Smith's sentence to the specific facts laid out in during the plea colloquy." (Mem. Supp. § 2255 Mot. 32.)

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure provides, *inter alia*, that "the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case . . . (such a recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). Counsel state:

> Smith contends that counsel was ineffective for failing to negotiate an 11(c)(1)(C) plea agreement for him. We can only assume he means a plea in which the Government and Smith would have agreed to a sentence [] for a specific term of years. Given the Government's view of Smith's role in the case, it is counsel's position that AUSA Young would have never agreed to a plea, limiting Smith's sentence to a specific number of years.

8

(Gov't's Resp. Attach. D ("Bruns/Cardwell Aff.") ¶ 12, ECF No. 49–4.) Counsel cannot be faulted for failing to negotiate a plea agreement that was not viable.

Smith further argues that if counsel had pursued a plea agreement pursuant to Rule 11(c)(1)(C), there is a probability that "the government would have agreed not to advocate for an upward departure, and would have agreed to not to oppose a sentence within the guideline sentencing range found by the Probation Department." (Mem. Supp. § 2255 Mot. 32.) Again, counsel cannot be faulted for failing to negotiate an agreement that was not viable. Moreover, the record reflects that the Government never moved for an upward departure. Accordingly, Smith fails to show how he was prejudiced by counsel's failure to negotiate the inclusion of this provision in his plea agreement.

In his Reply, Smith faults counsel for failing to negotiate a favorable plea agreement based upon "information Smith provided concerning unsolved murder cases." (Reply 4–5.) Counsel state:

> Smith contends that counsel abdicated our responsibilities to advocate for him by failing to effectively negotiate a favorable plea bargain for him. Smith was advised by counsel repeatedly that the government viewed him as the leader or "mastermind" behind the offense and was not inclined to offer him any concessions. After multiple discussions about ways to improve his legal circumstances Smith, on September 23, 2010, inquired of counsel as to whether the government's position may change if he had information to offer regarding other homicides, crimes of violence and drug distribution offenses. Based upon Smith's inquiry I (Bruns) reviewed the Rule 5K/Rule 35 process and explained to Smith how such information could be used to benefit him if verified. Smith then proceeded to provide me with information which was potentially very valuable and which would have, in my experience, been of great interest and value to law enforcement. On September 23 and 24 I made contact with representatives of the Henrico County Division of Police and the Richmond Police

Department in an effort to determine if the events described to me by Smith were known to them. Smith was not identified as the source of the inquiry. Virtually all of the events described to me by Smith were known to the police agencies and almost all were still open investigations. I advised Smith that I believed his information to be potentially valuable for post trial purposes.

Having been apprised of the potential value of his information, Smith continued to seek and provide information to me both verbally and in writing. Smith was told on multiple occasions by me and Ms. Cardwell, pre-plea, that the guidelines would likely recommend a life sentence and that we expected that he would receive a life sentence. Smith was well aware of the potential value of the information he was providing to us and that post trial cooperation was the most viable means of getting relief from the life sentence that we forecast. Smith approved of us having preliminary discussions with the AUSA about whether they would be inclined to request a post-trial sentence reduction if the information was verified and we did have those discussions.

Ms. Cardwell and I were under the impression that Smith intended to seek a sentence reduction by providing information to federal authorities. We were led to believe that that was his intention at the time of his plea. On February 14, 2011, Smith advised us that he no longer desired to cooperate with law enforcement by sharing information. We discussed the potential consequences of this decision with Smith at length. Ms. Cardwell and I were concerned enough about Smith['s] change of course that I wrote a letter to Smith on February 17 to ensure that he understood our intentions for his sentencing hearing and our advice regarding his decision not to cooperate (exhibit D). We visited him on February 28, 2011 and, once again, discussed his decision. Smith assured us that he understood the consequences of his decision.

(Bruns/Cardwell Aff. ¶¶ 14–16 (internal paragraph numbers omitted); *see also id.* Ex. D

at 2.)[4]

Moreover, Smith's contentions that he was dissatisfied with counsels' services in

relation to his plea agreement and his purported lack of understanding concerning

providing assistance are belied by the record. In his Plea Agreement, Smith agreed that

---

[4] The Court employs the pagination assigned to the exhibits to the affidavit by the CM/ECF docketing system.

he was satisfied that counsel had "rendered effective assistance." (Plea Agreement ¶ 4.)

Smith also agreed "to cooperate fully and truthfully with the United States, and provide

all information known to [him] regarding any criminal activity as requested by the

government." (*Id.* ¶ 12.) Smith understood that it was in the Government's sole

discretion to determine whether a motion for a downward departure pursuant to section

5K1.1 of the Sentencing Guidelines was appropriate. (*Id.* ¶ 16.) During the Rule 11

proceedings, Smith confirmed that he was "entirely satisfied" with counsels' services.

(Dec. 6, 2010 Tr. 5.) He agreed that he had received "ample opportunity" to discuss the

Plea Agreement with his attorneys. (Dec. 6, 2010 Tr. 8.)

Given these sworn statements, Smith's claim is "palpably incredible." *Lemaster,*

403 F.3d at 221 (internal quotation marks omitted) (citation omitted). Furthermore,

Smith's failure to obtain a sentence reduction stems not from any deficiency of counsel,

but from his subsequent decision not to cooperate with law enforcement officials.

Accordingly, Claim Two is without merit and will be dismissed.

### 3. Counsel's Failure to Request a "Pre-Presentence" Evaluation

In Claim Three, Smith alleges that counsel was ineffective for "fail[ing] to petition

the Court for, or advise Smith of, the option to receive a 'pre-presentence' evaluation

from U.S. Probation and Pretrial services." (Gov't Resp. 5.) Counsel state:

> Smith contends that counsel was ineffective for failing to request a
> 'pre-presentence report' prior to Smith's entry of a guilty plea, so that
> counsel would have been better informed of the probation officer's position
> (we presume on the sentencing guideline calculation). Counsel is unaware
> of the court or the probation office providing counsel with any kind of 'pre-
> presentence report' prior to entry of a guilty plea. As discussed *infra,* we

11

discussed with Smith the sentencing guidelines and informed him, that in our best judgment, his guidelines would call for a restricted range of life imprisonment.

(Bruns/Cardwell Aff. ¶ 13.)

In response, Smith asserts that "this is an erroneous assertion" because "there are many district courts in the Fourth Circuit that [o]rder pre-plea investigations when either defense counsel or Government counsel make such a request." (Reply 7.) However, other than his self-serving statements, Smith has provided no evidence to show that this practice is standard criminal practice in this Court. Smith has failed to explain how he was prejudiced by counsel's failure to request a "pre-presentence" report when counsel have averred that they discussed with Smith his potential Sentencing Guidelines range.

Furthermore, Smith's claim is belied by his statements during the Rule 11 proceedings. During the hearing, Smith agreed that he was "entirely satisfied" with counsels' services and that they had done "everything reasonable" he had asked them to do. (Dec. 6, 2010 Tr. 5.) Smith also stated that he and counsel had "discussed where [his] case [came] out on the federal criminal sentencing guidelines." (Dec. 6, 2010 Tr. 13–14.) Given these sworn statements, Smith's claim is "palpably incredible." *Lemaster*, 403 F.3d at 221 (internal quotation marks omitted) (citation omitted). Claim Three will be dismissed.

### 4. Counsel's Failure to Investigate

In Claim Four, Smith alleges that counsel was ineffective for failing to investigate information that he provided to them. First, Smith claims that "counsel failed to timely

12

investigate credible, trustworthy, reliable information pertaining to an agreement between

Mr. Smith's co-defendants in which they all agreed to point the blame toward Mr. Smith,

and testify to their collaborated agreement." (Mem. Supp. § 2255 Mot. 29.) In support

of his claim, Smith submits an affidavit from his mother, Gail Bushrod. (Mem. Supp.

§ 2255 Mot. Ex. D ("Bushrod Aff.") at 15, ECF No. 43–9.) Ms. Bushrod avers that she

arranged a meeting between Theodore Bruns, Smith's attorney, and a Ricardo Reynolds.

(*Id.*) Ms. Bushrod "personally witnessed the meeting." (*Id.*) During the meeting, Mr.

Reynolds "stated he was aware of an agreement between Joseph and his co-defendants.

He further explained that the agreement was to include Joseph to take the blame in

exchange for helping a co-defendant, India Smith." (*Id.*) Moreover, "Mrs. Smith,

Joseph's wife, was to be implicated in the alleged crimes the least as possible." (*Id.*) Ms.

Bushrod asserts that Reynolds "also stated that the federal investigators had threatened to

implicate him in the crimes if he attempted to assist [her] son with any type of defense."

(*Id.*) According to Ms. Bushrod, Reynolds was the only individual that Bruns

questioned, and Bruns told her "upon questioning other possible witnesses, 'I will not

chase ghosts.'" (*Id.*)

In response, counsel aver:

> It is true that Smith maintained that the government's belief that he
> played a leadership role in the offense was erroneous. He maintained that
> his co-defendants and law enforcement had conspired to falsely attribute a
> leadership role to him. Smith suggests that Ms. Cardwell and I failed him
> by not effectively investigating and subsequently proving that he was being
> framed by his codefendants. Smith maintained that it was part of his plan
> that he would allow the others to blame him (falsely) of being the leader of
> the endeavor. In exchange, Smith's co-defendant[]s were to provide an

account of events that left India Smith (Smith's wife) out of the plan altogether. We were unable to uncover any evidence that this plan actually existed. None of Smith's co-defendant[]s gave statements consistent with the plan and Smith himself did not proceed according to the plan. . . .

When Ms. Cardwell and I explained to Smith that we were unable to verify any of his claims we engaged Smith in conversation about his actual conduct. On multiple occasions Smith provided an account of his role which was consistent with the Statement of Facts which he ultimately signed. While Smith denied a leadership role, he did acknowledge the conduct described in the document. Ms. Cardwell and I explained to Smith that we believed that his acknowledged role would still result in a conviction if he were to proceed to trial. We explained the law and accomplice liability to him. He understood.

(Bruns/Cardwell Aff. ¶¶ 9–10 (internal paragraph numbers omitted).)

Smith has attached a declaration purported to be from Ricardo Reynolds to his Reply. (Reply Ex. 1 ("Reynolds Decl."), ECF No. 50–1.) Reynolds states that he met with Mr. Bruns and "discussed with him the fact that I knew for certain about the agreement that Joseph Smith and his co-defendant(s) made in regards to the crimes they were convicted of." (*Id.* at 1.) He claims that he was made aware of the agreement by Smith and his wife, India Smith. (*Id.*) Reynolds further states: "Although I have no intimate knowledge of the alleged crimes, *** involving Joseph Smith and his co-defendant[]s. It is very unlikely that he was the mastermind or even physically involved from what I gathered of him and his co-defendant[]s. I know them all very well, with the exception of Levon Smith." (*Id.* at 1–2 (internal paragraph numbers omitted).)

Upon review, the Court concludes that the affidavit from Ms. Bushrod and the declaration from Mr. Reynolds are insufficient to support Smith's claim. As an initial matter, Reynolds does not mention that Ms. Bushrod was present during the meeting he

had with Mr. Bruns. Moreover, Reynolds's declaration is entirely based upon hearsay, as he asserts that he learned of the supposed agreement from Smith and India Smith. Reynolds admits that he has no knowledge of the crimes committed by Smith and his co-defendants, but bases his belief that Smith could not have perpetrated the crimes on "what [he] gathered of him." (Reynolds Decl. at 2.) Given that Reynolds's declaration is based upon hearsay, Bushrod's affidavit is also based upon hearsay, because it is wholly based on what Reynolds allegedly knew. In any event, counsel did investigate the supposed agreement and concluded that no evidence existed to demonstrate that it in fact was true. (Bruns/Cardwell Aff. ¶ 9.) Given this, Smith has failed to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch*, 273 F.3d at 588 (quoting *Strickland*, 466 U.S. at 689).

Next, Smith asserts that counsel failed to investigate the fact that law enforcement officials "helped in setting up the agreement in which Mr. Smith would be the main target." (Mem. Supp. § 2255 Mot. 29.) He states that this claim is supported by the various exhibits he attached to his Memorandum. However, those exhibits make no mention of a plan where law enforcement officers conspired with Smith's co-defendants. Moreover, counsel have stated that they "uncovered no evidence suggesting that law enforcement agents conspired with Smith's co-defendant[]s to falsely implicate Smith in the instant crime." (Bruns/Cardwell Aff. ¶ 9.) While Smith and his codefendants may have agreed to allow Smith to take the majority of the blame, any such agreement simply

15

reflected that Smith was the most culpable individual. Smith has simply failed to show

that counsel's performance in this regard was deficient. Moreover, Smith's claims are

belied by the Rule 11 proceedings. Claim Four will be dismissed.[5]

### 5.   Counsel's Failure to Review Discovery with Smith

In Claim Five, Smith asserts that counsel "fail[ed] to review discovery with

[him]." (Gov't Resp. 5.) Counsel state:

> Contrary to his assertions, Ms. Cardwell and I spent considerable
> amounts of time reviewing the discovery materials with Smith. He was
> keenly aware of the nature of the government's evidence during the
> pendency of the case and, in response, wrote letters to multiple individuals
> seeking their aid in fashioning a false alibi.[] Ms. Cardwell and I
> repeatedly warned Smith of the harm he could do to his case if he continued
> to solicit false testimony and provided him with examples, provided to us in
> discovery, of statements taken by law enforcement from witnesses Smith
> had solicited to testify falsely on his behalf. After it became apparent that
> fellow inmates had spoken to law enforcement about Smith's efforts to
> solicit their assistance either as witnesses or as messengers between he and
> his co-defendants we all agreed, collectively, that it was not prudent for
> Smith to have copies of his discovery materials in his possession at the jail.
> Smith feared that other inmates may review his documents and offer to
> assist law enforcement after "educating themselves" about his case. We
> agreed.

(Bruns/Cardwell Aff. ¶ 8.)

In response, Smith asserts that "counsel does not identify any discovery that

counsel allegedly reviewed with Smith, nor does counsel state that Smith was allowed to

---

[5] In his Reply, Smith raises, for the first time, a claim that "counsel failed to contact and
interview any potential witnesses, including Government witnesses." (Reply 4; *see id.* at 6, 9.)
To the extent this claim is properly before the Court, it lacks merit. Smith fails to indicate that
he specifically requested that counsel interview potential witnesses. For this reason alone, he
fails to demonstrate any deficiency of counsel. Moreover, Smith has not advised the Court "of
what an adequate investigation would have revealed or what these witnesses might have said, if
they had been called to testify." *Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990).

review all of the discovery in counsels' possession." (Reply 10.) Smith also states that "counsel does not allege that Smith was afforded the opportunity to review or to be made aware of any discovery in the Government's file that was not physically disclosed to the defense." (*Id.* at 10–11.) However, besides his self-serving statements, Smith has presented no evidence to refute that counsel did review discovery with him. Moreover, Smith's claim is belied by his written Plea Agreement and the Rule 11 proceedings. Claim Five is without merit and will be dismissed.

### B.   Counsel's Performance During Sentencing Proceedings

In Claim Six, Smith asserts that counsel was ineffective for failing to properly handle sentencing issues. First, Smith claims that counsel "fail[ed] to investigate false information contained in Smith's presentence report which affected Smith's sentencing guideline." (Gov't Resp. 5.) However, Smith does not identify the false information purportedly included in his Presentence Investigation Report ("PSR"). Without knowing more, counsel has "conclude[d] that Smith is referring to the probation officer's conclusion that Smith was the leader of the group responsible for the Jamal Nasir/Willie Smith homicides." (Bruns/Cardwell Aff. ¶ 18.) Counsel aver that "[b]ased on the evidence reviewed in discovery, [they] saw no way to effectively challenge this conclusion." (*Id.*) Moreover, after discussion with counsel, Smith agreed it was not wise to challenge this conclusion because a challenge "would likely cause the government to call other witnesses to testify about things which the Court does not currently know."

17

(*Id.* Ex. D at 20, ECF No. 49–4.) Counsel cannot be faulted for failing to raise a meritless objection.

Next, Smith alleges that counsel "fail[ed] to research or study Sentencing Guidelines departures." (Gov't Resp. 5.) As an initial matter, Smith does not detail what departures he believes counsel should have researched. Counsel aver that they "found no combination of departures that were going to make a difference such that it was going to lower the guideline range from a term of life imprisonment." (Bruns/Cardwell Aff. ¶ 18.) Again, counsel cannot be faulted for failing to raise meritless challenges. Moreover, at the sentencing hearing, counsel requested that the Court sentence Smith to a term of years, "consistent with the way that his confederates have been sentenced." (Mar. 4, 2011 Tr. 24.) Counsel cannot be faulted for the Court's decision to sentence Smith to life imprisonment.

Finally, Smith claims that counsel was ineffective for "failing to present alibi evidence and therefore fail[ing] to properly counter the Government's motions and the Probation Office's suggestions." (Gov't Resp. 5.) Again, Smith does not provide any detail concerning what alibi evidence should have been presented. He also does not provide any detail concerning what motions and suggestions he refers to. The record reflects that the Government did not make any motions regarding Smith's sentencing. In any event, counsel "researched Mr. Smith's alibi and found it to be false." (Bruns/Cardwell Aff. ¶ 18.) Counsel "did not consider presenting this evidence at sentencing as [they] believed it would not paint Mr. Smith in a positive light." (*Id.*)

18

Given this, Smith has not overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch*, 273 F.3d at 588 (quoting *Strickland*, 466 U.S. at 689). Claim Six will be dismissed.

## C.   Counsel's Performance on Direct Appeal

In Claim Seven, Smith asserts that counsel was ineffective for "fail[ing] to file a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit; for filing a brief with the Court pursuant to *Anders v. California*, 386 U.S. 738 (1967); and by petitioning the Court to be removed from Smith's case." (Gov't Resp. 5.)

First, as to Smith's claim that counsel failed to file a Notice of Appeal, counsel have averred that Smith "never notified counsel of his desire to appeal until he mailed a copy of a Notice of Appeal which he filed Pro Se." (Bruns/Cardwell Aff. ¶ 19.) In any event, because Smith timely filed a *pro se* Notice of Appeal, he cannot demonstrate any prejudice that resulted from counsel not filing the Notice of Appeal.

Smith next faults counsel for filing a brief pursuant to *Anders*. Counsel have averred that once they received Smith's *pro se* Notice of Appeal, Bruns "began the process of perfecting his appeal." (Bruns/Cardwell Aff. ¶ 19.) "Because Smith had knowingly waived his appellate rights and because Bruns was not aware of any meritorious appealable issue in the case, Bruns filed an *Anders* brief and followed the procedures required by the Court of Appeals to assist Smith in perfecting his appeal." (*Id.*) Moreover, Bruns notified Smith of Smith's right to raise additional issues for review. (*Id.* Ex. E, at 22.) As noted above, Smith filed a *pro se* supplemental brief.

19

Smith does not explain what issues he believes counsel should have raised in lieu of an *Anders* brief. For that reason alone, he fails to demonstrate deficiency of counsel. *See Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citation omitted). Moreover, given that Smith raised additional issues in his *pro se* supplemental brief, he fails to demonstrate any prejudice arising from counsel's decision to file an *Anders* brief.

Smith also claims that counsel was ineffective for "petitioning the Court to be removed from Smith's case." (Gov't Resp. 5.) Contrary to Smith's assertion, the Fourth Circuit explicitly stated that counsel was required to "inform Smith, in writing, of the right to petition the Supreme Court of the United States for further review. If Smith request[ed] that a petition be filed, but counsel believe[d] that such a petition would be frivolous, then counsel [could] move . . . for leave to withdraw from representation." *Smith*, 454 F. App'x at 174. "Bruns remained available until allowed to withdraw by the Court of [A]ppeals." (Bruns/Cardwell Aff. ¶ 19.) As noted above, Smith did not pursue a petition for a writ of certiorari in the Supreme Court. Given this, Smith has failed to show how counsel's withdrawal after the disposition of his direct appeal prejudiced him. Claim Seven is without merit and will be dismissed. Smith's § 2255 Motion will be denied.

### III. MOTIONS TO AMEND

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). In his first motion to amend ("First

Motion to Amend," ECF No. 53), Smith attempts to add claims of ineffective assistance,

actual innocence, and sentencing error to his § 2255 Motion. In his second motion to

amend ("Second Motion to Amend," ECF No. 58), Smith does not attempt to add any

new claims. Rather, he provides documentation from the Bureau of Prisons indicating

that Smith arrived at USP Allenwood on July 6, 2015, after being transferred from USP

McCreary on July 1, 2015, and that he did not receive his personal property until July 19,

2015. (ECF No. 58-1, at 1.)

The Court appropriately denies as futile leave to amend, when the statute of

limitations bars the new claim. *See Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831,

2011 WL 1792460, at *1 (E.D. Va. May 5, 2011). As discussed below, the statute of

limitations bars Smith's claims and they are futile.

### A. Statute of Limitations

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA")

amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a

§ 2255 Motion. Specifically, 28 U.S.C. § 2255(f) now reads:

> **(f)** A 1-year period of limitation shall apply to a motion under this
> section. The limitation period shall run from the latest of—
> > **(1)** the date on which the judgment of conviction becomes
> > final;
> > **(2)** the date on which the impediment to making a motion
> > created by governmental action in violation of the
> > Constitution or laws of the United States is removed, if the
> > movant was prevented from making a motion by such
> > governmental action;
> > **(3)** the date on which the right asserted was initially
> > recognized by the Supreme Court, if that right has been newly

21

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Smith did appeal, under 28 U.S.C. § 2255(f)(1), his conviction became final on Wednesday, February 15, 2012, the last date to file a petition for certiorari in the Supreme Court. *See United States v. Sosa*, 364 F.3d 507, 509 (4th Cir. 2004); Sup. Ct. R. 13(1) (requiring that a petition for certiorari be filed within ninety days). On January 16, 2013, Smith filed his § 2255 Motion within the statute of limitations.[6] (§ 2255 Mot. 10.) However, Smith filed his First Motion to Amend on January 6, 2015, almost three years after his conviction became final. The Court did not receive Smith's Second Motion to Amend until August 28, 2015.[7] Because Smith failed to file his First and Second Motions to Amend within the one-year limit, the statute of limitations bars the motions unless Smith demonstrates entitlement to a belated commencement of the limitations period under 28 U.S.C. § 2255(f)(2)–(4), entitlement to equitable tolling,[8] *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)), or the new claim relates back to the claims in the § 2255 Motion, *see Pittman*, 209 F.3d at 314.

---

[6] The Court deems an inmate's motion filed on the date it is handed to prison staff for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

[7] Smith did not date his Second Motion to Amend before submitting it to the Court.

[8] Neither Smith nor the record suggests circumstances that warrant equitable tolling.

### B.    Belated Commencement

In his First Motion to Amend, Smith raises the following claims:

| | |
|---|---|
| Claim Eight: | "Counsel was constitutionally deficient in advising Mr. Smith that his only option herein was to plead guilty and that his diminished capacity would not be a defense to the crimes charged." (Mem. Supp. First Mot. Amend 2, ECF No. 53–3.) |
| Claim Nine: | "Counsel was constitutionally deficient in representing Mr. Smith, where he did not make Mr. Smith or the Court aware that he had been the prosecutor in a state case involving Mr. Smith." (*Id.* at 4.) |
| Claim Ten: | "The trial court erred where it allowed Mr. Smith to plead to and sentenced him to a crime that he factually is innocent of committing." (*Id.* at 6.) |
| Claim Eleven: | "The trial court erred when it sentenced Mr. Smith to a term of supervision that exceeds the statutory maximum term that is authorized by Congress." (*Id.* at 11.) |

As an initial matter, Claim Nine is a reiteration of Claim One, which the Court has already determined is meritless. Accordingly, the Court denies as futile Smith's request to bring this repetitive claim.

As to Claims Eight, Ten, and Eleven, Smith claims that he did not raise them in his § 2255 Motion because he "ha[s] trouble with reading and writing, and comprehending basic law, and [has] not had the assistance of counsel since leaving the trial court." (Decl. Supp. First Mot. Amend 3, ECF No. 53–1.) He asserts that he was "only able to bring the instant motion, and the previous motion herein, with the assistance of inmate law clerks who have been able to assist [him]." (*Id.*) However, Smith fails to

23

explain why, acting with due diligence, he was able to timely file his § 2255 Motion, but could not discover the facts supporting the claims raised in his First Motion to Amend within the one-year limitations period.

In his Second Motion to Amend, Smith provides documentation from the Bureau of Prisons indicating that Smith arrived at USP Allenwood on July 6, 2015, after being transferred from USP McCreary on July 1, 2015, and that he did not receive his personal property until July 19, 2015. (ECF No. 58–1, at 1.) In that documentation, Unit Manager F. Passaniti states that Smith "followed the appropriate procedures by utilizing Unit Team staff for indigent postage and mailing accountability, which has delayed his mailings." (*Id.*) However, the fact that Smith did not receive his personal property at USP Allenwood until July 19, 2015, fails to explain why he did not file his First Motion to Amend until January 6, 2015. Because Smith fails to demonstrate any meritorious grounds for belated commencement or equitable tolling, the statute of limitations bars the amendment unless the claims relate back to a claim in the original § 2255 Motion.

### 3.    Relation Back

Courts apply Rule 15 of the Federal Rules of Civil Procedure to motions to amend in a § 2255 case. *Pittman*, 209 F.3d at 317. Rule 15 allows for amendments to the petition after the one-year statute of limitations, provided the amendment relates back to the original timely filed petition. A claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

An amended claim "does not relate back (and thereby escape[s] AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). In this regard, it is not sufficient that the new claim simply "has the same form as the original claims," if the new claim "arises out of wholly different conduct." *Pittman*, 209 F.3d at 318. Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)).

In Claim Eight, Smith contends that counsel was ineffective for "advising Mr. Smith that his only option herein was to plead guilty and that his diminished capacity would not be a defense to the crimes charged." (Mot. Supp. First Mot. Amend. 2.) In Claim Ten, Smith asserts that the "trial court erred where it allowed Mr. Smith to plead to and sentenced him to a crime that he factually is innocent of committing." (*Id.* at 6.) Finally, in Claim Eleven, Smith alleges that the Court "erred when it sentenced Mr. Smith to a term of supervision that exceeds the statutory maximum term that is authorized by Congress." (*Id.* at 11.) Smith raised no claims regarding counsel's advice concerning his diminished capacity, his innocence, or that the Court erred in imposing his sentence in his original § 2255 Motion. Accordingly, these claims "arise from separate

25

occurrences of 'both time and type'" than his original claims. *Pittman*, 209 F.3d at 318

(quoting *Craycraft*, 167 F.3d at 457). Therefore, Claims Eight, Ten, and Eleven fail to

relate back and are barred by the statute of limitations.

## IV.    CONCLUSION

For the foregoing reasons, Smith's § 2255 Motion (ECF No. 42) will be denied.

Smith's First Motion to Amend (ECF No. 53) will be denied. Smith's motion to proceed

*in forma pauperis* (ECF No. 54) will be denied as moot. Smith's Second Motion to

Amend (ECF No. 58) will be denied. The action will be dismissed. The Court will deny

a certificate of appealability.

The Clerk is directed to send a copy of the Memorandum Opinion to Smith and

counsel of record.

It is so ordered.

                                                    /s/
                                        HENRY E. HUDSON
                                        UNITED STATES DISTRICT JUDGE

Date: **Nov. 18, 2015**
Richmond, Virginia

26